UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| JOSE LORENZO MORALES, | Case No.: 1:17-cv-01673-AWI-JLT (PC) |
|---|---|
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES** |
| v. | |
| R. TORRES, et al., | |
| Defendants. | (Doc. 54) |
| | 21-DAY DEADLINE |

Defendants Torres, Alvarado-Torres, and Gamboa move for summary judgment on the grounds that Plaintiff Morales failed to exhaust administrative remedies prior to filing suit. (Doc. 54.) Plaintiff filed an opposition to Defendants' motion on November 19, 2019, and Defendants filed a reply. (Docs. 65, 66.) For the reasons set forth below, the Court recommends that Defendants' motion be granted and this action dismissed without prejudice.

**I.  SUMMARY OF FACTS**

On October 25, 2015, Plaintiff injured his leg in the recreational yard of California State Prison, Corcoran (CSP-COR). (Morales Decl., ¶ 3, Doc. 65-1 at 1-2.) Dr. Wahi diagnosed Plaintiff with a left ankle fracture and prescribed crutches, (*id.*, ¶ 4; Plaintiff's Statement of Undisputed Facts (Pl.'s SUF), No. P1, Doc. 65-2 at 2). Upon returning to CSP-COR, Plaintiff received a medical "chrono" for the use of crutches. (Morales Decl., ¶ 6, Doc. 65-1 at 2.) On

October 28, 2015 Plaintiff was placed in administrative segregation (ad-seg). (Pl.'s SUF, No. P3, Doc. 65-2 at 5.) While Plaintiff was in ad-seg, Correctional Officers Gamboa and Alvarado-Torres refused to provide him with crutches, and Plaintiff was forced to hop around his cell. (*Id.*, Nos. P4-P5.)

On October 30, 2015, Dr. Khin found a displaced distal fibular fracture and again prescribed Plaintiff crutches. (Morales Decl., ¶ 10, Doc. 65-1 at 3.) The next day, Dr. Aye observed increased leg swelling and ordered a medical emergency transfer. (*Id.*, ¶ 11.) On November 3, Nurse Practitioner Rouch issued a second medical chrono for the use of crutches. (*Id.*, ¶ 12.) Plaintiff then met with the Administrative Classification Committee to discuss his housing accommodations, during which he presented the two chronos he had received at that point.[1] (Pl.'s SUF, No. P6, Doc. 65-2 at 5.) After the meeting, Alvarado-Torres again refused to provide Plaintiff with crutches. (Morales Decl., ¶ 14, Doc. 65-1 at 2.) Plaintiff underwent surgery on his ankle on November 18, 2015. (Pl.'s SUF, No. P7, Doc. 65-2 at 5.)

On December 15, 2015, Plaintiff submitted an administrative grievance to CDCR. (*Id.*, No. P10; Gates Decl., ¶ 3, Doc. 54-3 at 13.) In his grievance, Plaintiff states, "On 10-25-15 I broke my leg. (My fibula) On the 29/30 I rebroke my [sic] due to custody taking away medically prescribed walking devices. (Crutches)." (Gates Decl., Ex. A, Doc. 54-3 at 21.) Plaintiff further complains about waiting 18 days for his prescribed surgery, about the pain medication he is receiving, and about not having the dressing on his wound changed post-surgery. (*Id.* at 23.) In his request for relief, Plaintiff asks for monetary compensation, that his dressing be changed, and to be sent to "pain management to be properly medicated." (*Id.* at 21, 23.)

On March 15, 2016, Plaintiff filed a request seeking the status of his appeal. (Pl.'s SUF, No. P11, Doc. 65-2 at 6.) In that request, Plaintiff states "I placed in 602's (staff complaints, denial of medical supply) around November on officers Alvarado-Torres and also Officer R. Torres … for maliciously taking my crutches away …. which ultimately caused my leg to be broken." (Morales Decl., Ex. C, Doc. 65-1 at 18.)

---

[1] In November and December of 2015, Plaintiff received a total of three administrative chronos documenting his need for crutches. (Pl.'s SUF, No. P2, Doc. 65-2 at 5.)

California Correctional Health Care Services (CCHCS) issued a first-level response dated March 4, 2016 (but signed April 28, 2016), in which it addressed Plaintiff's requests for proper pain medication and management, for monetary compensation, and that his appeal be deemed an emergency. (Gates Decl., Ex. A., Doc. 54-3 at 25-26.) The response did not address Plaintiff's complaints about his crutches. (*See id.*) CCHCS granted in part and denied in part Plaintiff's requests. (*See id.*)

Plaintiff appealed the first-level decision on May 10, 2016. (Pl.'s SUF, No. P13, Doc. 65-2 at 6.) In the appeal, Plaintiff states that he is dissatisfied with having waited 30 days to have his bandages cleaned and staples removed following surgery. (Morales Decl., Ex. F, Doc. 65-1 at 26.) Plaintiff does not mention being denied crutches or complaints against Alvarado-Torres and Torres. In its second-level review, CCHCS granted in part and denied in part Plaintiff's appeal. (Gates Decl., Ex. A, Doc. 54-3 at 27-28.) The decision is dated June 28, 2016 (but signed August 24, 2016). (*Id.*)

Plaintiff appealed the second-level decision on August 30, 2016. (Pl.'s SUF, No. P15, Doc. 65-2 at 6.) In his appeal, Plaintiff states that staff downplayed his injuries, and again complains about waiting 18 days for surgery and about his staples not being removed for 30 days post-surgery. (Morales Decl., Ex. F, Doc. 65-1 at 26-27.) Plaintiff further states, "…[I] made the prison aware of custody officers taking away my crutches and still they did nothing. Never taking my claims serious." (*Id.* at 27.) CCHS denied the appeal in its third-level review on December 2, 2016. (Defendants' Statement of Undisputed Facts (Defs.' SUF), ¶10, Doc. 54-3 at 3.) In its denial, CCHCS does not address Plaintiff's complaint regarding his crutches. (*See* Gates Decl., Ex. A, Doc. 54-3 at 17-18.)

Plaintiff brought suit on December 13, 2017. (Doc. 1.) Plaintiff's operative claims are against Correctional Sergeant Gamboa for taking away his crutches and against Correctional Officers Torres and Alvarado-Torres for failing to provide him crutches. (Doc. 19 at 1.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine

3

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment … is satisfied." *Id.* at 323.

**B. Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies

4

to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is an affirmative defense, which the defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). On a motion for summary judgment, the defendant must prove (1) the existence of an available administrative remedy and (2) that Plaintiff failed to exhaust that remedy. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citations omitted). If the defendant meets this burden, "the burden shifts to the plaintiff, who must show that there is something particular in his case that made the existing and generally available administrative remedies effectively unavailable to him…." *Id.* If the plaintiff fails to meet this burden, the court should dismiss the unexhausted claims or action without prejudice. *See Lira v. Herrera*, 427 F.3d 1164, 1175 (9th Cir. 2005).

### C. CDCR Grievance Process

The CDCR has an administrative grievance system for prisoners to appeal a policy, decision, action, condition, or omission by the department or staff if it has an adverse effect on prisoner health, safety, or welfare. Cal. Code Regs., tit. 15, § 3084.1(a). Compliance with 42 U.S.C. section 1997e(a) requires California state prisoners to use CDCR's grievance process to exhaust their claims before filing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010); *see also Woodford*, 548 U.S. at 85-86. All administrative appeals are subject to three levels of review before the remedy is deemed exhausted. Cal. Code Regs., tit. 15, § 3084.1(b); s*ee also Sapp*, 623 F.3d at 818.

## III. DISCUSSION

The parties do not dispute that Plaintiff filed an administrative grievance on December 15, 2015 (log no. COR HC 16059817), or that he exhausted that grievance on December 2, 2016. (Defs.' SUF, ¶10; Pl.'s SUF, Nos. P10, P16.) The parties also do not dispute the contents of the

grievance; and, each provides a copy of the grievance with their motion or opposition. (*See* Gates Decl., Ex. A, *and* Morales Decl., Exs. B, F.) The central issue is whether the grievance exhausted the specific claims against the defendants in this action.

Defendants argue that the grievance did not exhaust Plaintiff's claims because (1) Plaintiff did not identify the defendants, in violation of CDCR regulations, and (2) his requested relief was proper pain management and medication. (Doc. 54-1 at 7; *see also* Doc. 66 at 3.) Defendants therefore contend that Plaintiff's grievance did not put CDCR on notice of Plaintiff's complaints against the defendants. (Doc. 54-1 at 7-8; *see also* Doc. 66 at 3.)

Defendants also point out that CCHCS' responses only addressed Plaintiff's requests for pain management, proper pain medication, and monetary compensation, as well as his requests that his dressing be changed and his appeal be treated as an emergency. (Doc. 54-1 at 8-9.) The responses did not address Plaintiff's complaints about his crutches. (*Id.*) Defendants argue that, since CCHCS did not render a decision on the merits of Plaintiff's claims in this action, their responses do not excuse Plaintiff's failure to abide by CDCR grievance procedures, i.e., his failure to specifically name the parties responsible for the aggrieved actions. (*See id.*) Thus, the exception to proper exhaustion outlined in *Reyes v. Smith* does not apply. (*Id.* at 9.) *Cf.* 810 F.3d 654, 658 (9th Cir. 2016) (holding that a prisoner exhausts administrative remedies "despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance").

In his opposition, Plaintiff argues that CCHCS's third-level denial properly exhausted his claims and, alternatively, CDCR's administrative remedies were effectively unavailable, thus excusing any failure to exhaust. (*See* Doc. 65 at 10-15.) With respect to his first argument, Plaintiff contends that *Reyes v. Smith* does apply. (*Id.* at 11-12.) Plaintiff states that Defendants "unilaterally narrowed the scope of his … appeal" (i.e., by ignoring his complaint regarding his crutches in its first-level review) and did not inform Plaintiff of any procedural defect with respect to not naming the defendants. (*Id.* at 11-12; *see also id.* at 8-9) Thus, Plaintiff contends, Defendants are barred from raising the procedural flaw to argue that Plaintiff failed to exhaust. (*Id.* at 12.)

6

With respect to his second argument, Plaintiff states that his original grievance was an "emergency 602" appeal, which CDCR lost for nearly a month. (*Id.* at 12.) Plaintiff argues that, since CDCR did not process the emergency appeal within the time limits prescribed by its regulations, it did not provide him with a remedy that was effectively "available." (*Id.* at 13.)

Plaintiff further argues that CDCR's grievance procedure amounts to a "dead end," and thus is unavailable under *Ross v. Blake*, 136 S. Ct. 1850 (2016). (*Id.* at 14.) For this latter proposition, Plaintiff points to the fact that the same individual, Dr. McCabe, participated in both the first and second levels of review, in violation of CDCR's regulations. (*Id.*) Thus, Plaintiff argues that the grievance procedure amounted to a "dead end" because each level of review was not undertaken by "unbiased individuals." (*Id.*)

As explained more fully below, *Reyes v. Smith* is inapposite here. The Court finds that Plaintiff failed to exhaust his administrative remedies because he neglected to name the defendants in his grievance and to provide sufficient information to allow CDCR to identify them. Because Defendants meet their burden in showing that Plaintiff failed to exhaust an available remedy, the burden shifts to Plaintiff to show that the generally available remedy was unavailable in his specific case. *Williams*, 775 F.3d at 1191. Plaintiff does not meet this burden. Therefore, the Court must dismiss this action.

**A. Plaintiff did not exhaust administrative remedies for the claims in this action**

The PLRA requires "proper exhaustion," which means that "the prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88, 93. The rules that must be followed, in other words, "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system …, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

Prior to 2011, California's grievance procedures only required the inmate to "describe the problem and the action requested." *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (quoting former Cal. Code Regs. tit. 15, § 3084.2). The regulations were amended in 2010, with

the changes becoming operative in 2011. *See* Cal. Code Regs. tit. 15, § 3084.2 (History Notes 11-12). Since then, California regulations require the following:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question.

Cal. Code Regs. tit. 15, § 3084.2(a)(3).

In his grievance, Plaintiff does not list the staff members who allegedly failed to provide him crutches, i.e., the defendants. The only relevant information Plaintiff provides is "custody" and the dates of the alleged incidents, October "29/30". (Gates Decl., Ex. A, Doc. 54-3 at 21.) Such barebone information fails to reduce the pool of potential staff members to one that would reasonably assist an appeals coordinator. In his appeal of the first-level decision, Plaintiff again does not name the defendants, nor does he mention the fact that the first-level decision did not address or even mention his complaint about crutches. (Morales Decl., Ex. F, Doc. 65-1 at 26.)

Plaintiff was certainly capable of naming the defendants, since he names two of them in his request regarding the status of his appeal. (Morales Decl., Ex. C, Doc. 65-1 at 18.) That request, though, does not constitute the appeal itself; and CDCR regulations are clear that the appeal ("CDCR Form 602") must name or at least provide "available information" about the staff members involved. Cal. Code Regs. tit. 15, § 3084.2(a); *see also Avery v. Paramo*, No. 3:13-cv-02261-BTM-DHB, 2015 WL 4923820, at *7 (S.D. Cal. 2015) (letter to defendants does not excuse failure to submit CDCR Form 602 or to "proceed[] through all the administrative steps required to properly exhaust"). Moreover, Plaintiff submitted that request on March 15, 2016, after CCHCS had already issued its first-level decision on March 4 (though, admittedly, before it was signed). (Pl.'s SUF, No. P11, Doc. 65-2 at 6; Gates Decl., Ex. A., Doc. 54-3 at 25-26.) Plaintiff also refused an interview on February 25, 2016, at which he could have provided information about the parties involved. (Morales Decl., Ex. D, Doc. 65-1 at 20.) Plaintiff thus failed to provide sufficient information about the defendants to comply with CDCR regulations.

1    In his opposition, Plaintiff argues that, since CCHCS failed to inform Plaintiff of any
2    procedural defects and issued a decision on the merits at every level of review, Defendants are
3    precluded from now raising a procedural flaw to argue that Plaintiff failed to exhaust. (Doc. 65 at
4    11-12.) In support of this argument, Plaintiff cites *Reyes v. Smith*, (*id.* at 11), which held that a
5    prisoner exhausts administrative remedies "despite failing to comply with a procedural rule if
6    prison officials ignore the procedural problem and render a decision on the merits of the
7    grievance at each available step of the administrative process." 810 F.3d at 658.

8    Reliance on *Reyes* is misplaced. In *Reyes*, the plaintiff filed an administrative appeal
9    regarding changes to his pain medication. 810 F.3d at 656. CCHCS denied Plaintiff's grievance at
10   all three levels of review, citing the decision of the prison's Pain Management Committee that the
11   requested narcotics were not medically necessary. *Id.* Plaintiff brought suit, and the district court
12   dismissed his claims against Drs. Smith and Heatley for failure to exhaust because he neglected to
13   name the defendants in his grievance. *Id.* The Ninth Circuit reversed the district court's decision
14   because CCHCS had addressed Plaintiff's claim regarding his pain medication on the merits, and
15   thus CDCR had waived the procedural flaw of failing to name the defendants. *See id.* at 657-58.
16   The Ninth Circuit further noted that the Pain Management Committee included Drs. Smith and
17   Heatley; and, since CCHCS cited the committee in denying Plaintiff's grievance, prison officials
18   were clearly on notice of the nature of the wrong alleged and the parties involved. *See id.* at 659.

19   In the present case, although CCHCS addressed some of Plaintiff's claims on the merits, it
20   did not address the claims underlying this action, i.e., Plaintiff's claims that he was denied
21   crutches. In *Reyes*, prison officials rendered a decision on the specific claims regarding pain
22   management that Plaintiff later raised in his lawsuit, and it cited the decision of the committee of
23   which the defendants were a part to show that they were on notice of the claims. Here, CCHCS
24   only addressed Plaintiff's claims regarding pain management and wound dressing, his request for
25   monetary compensation, and his request that his appeal be deemed an emergency. (Gates Decl.,
26   Ex. A., Doc. 54-3 at 17-18, 25-28.) At no level of review did CCHCS render a decision regarding
27   crutches. (*See id.*) The mere fact that CCHCS issued *a* decision on the merits of *some* claims does
28   not transform its decision into one on the merits of the claims at issue in this action. *See Rhodes v.*

*Robinson*, 621 F.3d 1002, 1005 (9th Cir. 2010) ("prisoner must exhaust his administrative remedies for the claims *contained within his complaint* before that complaint is tendered to the district court") (emphasis added). Defendants therefore meet their burden in showing that Plaintiff failed to exhaust.

**B. Plaintiff is not excused from failing to exhaust**

Plaintiff must only exhaust administrative remedies that are "available;" he "need not exhaust unavailable ones." *Ross*, 136 S. Ct. at 1858 (2016). The Supreme Court has identified three circumstances under which a remedy is unavailable: (1) the remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) the "administrative scheme … [is] so opaque that …. no ordinary prisoner can discern or navigate it," and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.

Plaintiff argues that the first circumstance applies for two reasons: one, CCHCS took nearly four months to respond to his grievance; and, two, the same individual, Dr. McCabe, participated in both the first and second levels of review. (*See* Doc. 65 at 14.) Neither reason shows that the administrative process amounted to a "dead end." In *Ross*, the Supreme Court gave two examples where a process operates as a dead end:

> "Suppose, for example, that a prison handbook directs inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions. The procedure is not then 'capable of use' for the pertinent purpose…. [W]here the relevant administrative procedure lacks authority to provide any relief, the inmate has nothing to exhaust…. So too if administrative officials have apparent authority, but decline ever to exercise it…. When the facts on the ground demonstrate that no … potential [for relief] exists, the inmate has no obligation to exhaust the remedy."

136 S. Ct. at 1859 (citations and internal quotation marks omitted).

Plaintiff does not explain how a delayed review, or the same individual participating in two levels of review, demonstrates that CDCR's grievance process lacks authority to provide relief, or that prison officials have such authority but decline to ever exercise it. As an initial matter, Plaintiff does not cite any legal authority, and the Court finds none, that provides that a prison official cannot participate in more than one level of review, particularly where the final

10

level of review is conducted by a different official, as was the case here. Furthermore, and more to the point, CCHCS granted Plaintiff's appeal in part at the first and second levels of review. (Gates Decl., Ex. A, Doc. 54-3 at 25-28.) CCHCS did deny Plaintiff's request for monetary compensation and to have his appeal be deemed an emergency, and it declined to address Plaintiff's complaint about waiting 18 days for surgery and 30 days to have his staples removed. (*See id.*) However, CCHCS granted Plaintiff's request for proper pain management and medication and that his dressing be changed. (*Id.*) This fact shows that the grievance process was not a simple dead end, even if it failed to address all of Plaintiff's complaints and to offer the specific relief he requested. *See Booth v. Churner*, 532 U.S. 731, 741 (2001) (exhaustion is mandatory "regardless of the relief offered through administrative procedures").

Lastly, Plaintiff argues that his administrative remedy was effectively unavailable because CDCR lost his emergency appeal for nearly a month and failed to respond by the time limits prescribed by its own regulations. (Doc. 65 at 12-13.) Plaintiff again does not explain how these facts show that he effectively had no remedy, and Plaintiff again offers no authority providing that a missed internal deadline renders a remedy unavailable. The Court notes that CDCR's apparent difficulty in abiding by its own time limits is troubling. (*See* Palmer Decl., ¶ 3, Doc. 65-3 at 2.) Nevertheless, Plaintiff presents no facts showing that (1) officials at his prison are unable or consistently unwilling to provide relief to inmates, (2) that the grievance process is so opaque that he could not navigate it, or (3) that officials thwarted his attempts to take advantage of the grievance process through machination or intimidation. *See Ross*, 136 S. Ct. at 1859-60. Though it missed its deadline, CCHCS did rule on Plaintiff's appeal, including by denying his request that it be deemed an emergency. (Gates Decl., Ex. A, Doc. 54-3 at 17-18, 25-28.) And, as stated above, it partially granted his requests. (*Id.*)

The facts offered by Plaintiff do not demonstrate that a remedy was unavailable with respect to the claims at issue in this action, i.e., Defendants' failure to provide Plaintiff crutches. For this reason, Plaintiff does not meet his burden in showing that something in his particular case made an existing remedy effectively unavailable to him. *See Williams*, 775 F.3d at 1191. Therefore, Plaintiff is not excused from failing to exhaust prior to filing suit.

11

## IV. CONCLUSION AND RECOMMENDATIONS

Based on the foregoing, the Court recommends that Defendants' motion for summary judgment, (Doc. 54), be **GRANTED** and that this action be **DISMISSED** without prejudice for failure to exhaust administrative remedies.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 21 days** of the date of service of these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 27, 2019**      **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE